DIRECTORS OF THE BOSTON AND MAINE RAILROAD *vs.* CITY OF WOBURN & others.

Middlesex. February 6, 1929. — February 27, 1929.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Way*, Public: alteration of bridge over railroad. *Railroad. Bridge. Commonwealth. Equity Pleading and Practice*, Parties.

If a State highway stops about one hundred twenty feet from the center of a railroad track crossed by a bridge, about seventy-five feet from the nearest point of the bridge, and from six to ten feet from a point where excavation begins for a new bridge in process of an alteration not involving the abolition of a crossing at grade, and the way beyond that point is either a town or a county way and there is no intervening or intersecting public way between the said end of the State highway and the bridge itself, the crossing and its approaches properly may be found to be "in direct continuation of a State highway," and an objection by the Commonwealth to being included as a party to proceedings under G. L. c. 159, §§ 59–62, as amended by St. 1923, c. 351, §§ 1–3, properly may be overruled and the Commonwealth ordered retained as such party.

PETITION, filed in the Superior Court on June 20, 1928, for the appointment of a special commission in proceedings under G. L. c. 159, §§ 59–62, as amended by St. 1923, c. 351, §§ 1–3.

An objection by the Commonwealth to being held as a party to the proceedings was heard by *Hammond*, J. Facts found by him are stated in the opinion. He ruled that the Commonwealth should be retained as a party and reported the case for determination by this court.

G. L. c. 159, §§ 59–62, as amended by St. 1923, c. 351, §§ 1–3, are as follows:

"Section 59. If a public way and a railroad cross each other, and the board of aldermen of the city or the selectmen of the town where the crossing is situated, or the division of highways of the department of public works, if the crossing and its approaches are in direct continuation of a State highway, or the directors of the railroad corporation, or the directors of a railway company having tracks

on said way, deem it .necessary for the security or convenience of the public that an alteration not involving the abolition of a crossing at grade should ·be made in the crossing, the approaches thereto, the location of the railroad or way, or in a bridge at the crossing, they shall apply to the county commissioners, or, if the crossing is situated, in whole or in part, in Boston, to the department, who shall, after public notice, hear all parties interested, and, if they decide that such alteration is necessary, shall prescribe the manner and limits within which it shall be made, and shall forthwith certify their decision to the parties and to said department.   This proceeding may include any case where there is need of the rebuilding of a highway bridge or any structural change or renewal in order to strengthen or improve it. . . ."

"Section 61.   A commission of three disinterested persons, appointed as provided in . . . [§ 62] . . ., shall determine which party shall carry such decision into effect and which party shall pay the charges and expenses of making such alteration and the future charges for keeping such bridge or crossing and the approaches thereto in repair, as well as the costs of the application to the county commissioners, or the department, and of the hearing before said commission; and it may apportion all such charges, expenses and costs between the railroad corporation, the railway company having tracks on said way, and the counties, cities or towns where said crossing is situated and other cities and towns which may be specially benefited; and if the crossing and its approaches are in direct continuation of a State highway, the Commonwealth may be included in such apportionment and its share shall be paid from the annual appropriation for maintenance and repair of State highways. . . ."

*E. T. Simoneau,* Assistant Attorney General, (*G. B. Lourie,* Assistant Attorney General, with him,) for the Commonwealth.

*L. A. Mayberry,* for the County Commissioners of Middlesex County.

*F. W. Knowlton,* (*M. Jenckes* with him,) for the petitioners.

CARROLL, J.   This case is before us on a report of a judge of the Superior Court in a proceeding for the appointment of a commission under G. L. c. 159, § 61, as amended by St. 1923, c. 351, § 2.   The Commonwealth seeks to be dismissed as a party to the proceeding, on the ground that it has no interest in the bridge and approaches referred to in the petition; that the "bridge and its approaches are not in direct continuation of a State highway"; and that the bridge and its approaches are a part of the highway in the city of Woburn, over which highway the Commonwealth exercises no authority.   It appeared that upon petition of the directors of the Boston and Maine Railroad, filed with the county commissioners, the county commissioners decided on May 25, 1928, the manner and limits of alterations of a bridge and its approaches at Walnut Hill in the city of Woburn, the description being, "Bridge No. 10.59 . . . Walnut Hill, Mass., southern division.   The stone arch bridge carrying Salem Street over the tracks of the southern division of the Boston & Maine Railroad."

The judge found that the State highway at its westerly terminus was about one hundred twenty feet east of the center of the railroad track and about seventy-five feet from the nearest point of the bridge; that the State highway marker was six to ten feet from where the excavation for the new bridge begins; that the road west of the State highway terminus is either a town or county road in the city of Woburn; that there is no visible intervening or intersecting public way between the end of the State highway on the Reading side of the bridge and the bridge itself.

The judge ruled that the crossing and its approaches were in direct continuation of a State highway, and the Commonwealth should continue as a party to the proceeding.   St. 1923, c. 351, § 1, provides, so far as material to the question before us, that if a public way and a railroad cross each other, and the board of aldermen or the selectmen of the town where the crossing is situated, or the division of highways of the department of public works if the crossing and its approaches are in direct continuation of a State highway, consider it necessary that an alteration not involving the abolition of a

crossing at grade should be made, application shall be made to the county commissioners. By St. 1923, c. 351, § 2, a commission shall determine which party shall pay the charges and expenses of the alteration, "and if the crossing and its approaches are in direct continuation of a State highway, the Commonwealth may be included in such apportionment and its share shall be paid from the annual appropriation for maintenance and repair of state highways."

The Commonwealth was a party to these proceedings under St. 1923, c. 351, § 2, if the crossing in question was in direct continuation of a State highway; and in our opinion it was such a continuation within the meaning of the statute. St. 1923, c. 351 was passed for a purpose. By § 1 the Commonwealth was given the power to petition for alterations where a public way and railroad cross each other, "if the crossing and its approaches are in direct continuation of a State highway," and under § 2 the Commonwealth may be called upon to share the financial burden of the alteration in such a crossing. The statute refers not only to the bridge itself, but to its approaches, and if either the bridge or its approaches are in direct continuation of a State highway, the Commonwealth is properly a party to the proceedings. The approaches to the crossing mean the way by which the bridge can be made accessible for travel. The State highway ends not more than ten feet from the beginning of the excavation for the new bridge, and about seventy-five feet from the nearest point of the bridge. It is a part of a route customarily followed from Woburn to Reading, and from Woburn to points north. Travellers on the highway coming from Concord, Waltham, Wellesley and Needham, use this way in going to Reading, Andover and Lawrence; and at the end of the State highway approaching the bridge, there is no intervening public way, so that a moving vehicle at the end of the State highway would naturally proceed on to the approaches of the crossing or to the bridge.

It is contended by the Commonwealth that the statute is not applicable because there is an intervening space between the State highway and the bridge; that the bridge and its approaches are not contiguous to the State highway. We do

not agree with this contention. Contiguity of the bridge and State highways need not exist in order that the crossing and its approaches may be in direct continuation of the highway. The direct continuation of a highway, within the meaning of the statute, was across this bridge, although the State highway did not extend to the bridge. The Legislature did not intend that the crossing should in fact intersect the bridge, nor that there should be an uninterrupted and continuous State highway leading to the crossing, and the crossing itself a direct continuation of a highway and touching it. The words "in direct continuation" of a way do not require the construction contended for by the Commonwealth. The only requirement is that the crossing and its approaches shall be in direct continuation of a State highway.

It also appeared that it was the practice of the department of public works to stop State highways short of a railroad bridge, and then to commence on the other side of the bridge; and where the road was carried over a railroad by a bridge, the department of public works would stop short even of the railroad location. Evidently this was known to the Legislature, and explains and gives meaning to the phrases "crossing and its approaches," and "in direct continuation of"; and, in view of the practice of the department of public works, the language of the statute was intended to apply to the situation here. See *Browne* v. *Turner*, 174 Mass. 150, 159.

We do not think it follows, as the Commonwealth contends, that from this construction the Commonwealth can be made a party to every proceeding for alterations of a crossing. It can be made a party under St. 1923, c. 351, § 2, only when the crossing and its approaches are, as in the case at bar, in direct continuation of a State highway.

The judge was right in ordering a decree retaining the Commonwealth as a party to the proceedings.

*Decree affirmed.*